UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CROWN CASTLE NG EAST LLC,　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　　　　　　　: **OPINION AND ORDER**
　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　: 17 CV 3535 (VB)
　　　　　　　　　　　　　　　　　　　　:
THE CITY OF RYE and THE CITY COUNCIL　:
OF THE CITY OF RYE,　　　　　　　　　　:
　　　　　　　Defendants.　　　　　　　　:
--------------------------------------------------------------x

Briccetti, J.:

　　　　Plaintiff Crown Castle NG East LLC ("Crown Castle") brings this action against defendants the City of Rye (the "City") and the City Council of the City of Rye (the "City Council") under the federal Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. 151 et seq. Crown Castle also brings state law claims under Article 78 of the New York Civil Practice Law and Rules ("CPLR"); under the New York State Transportation Corporations Law; and for breach of contract.

　　　　Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) (Doc. #13), and plaintiff's motion for a preliminary injunction.

　　　　For the following reasons, the motion to dismiss is GRANTED, and the motion for a preliminary injunction is DENIED AS MOOT.

　　　　The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

# BACKGROUND

For the purpose of deciding the pending motion, the Court accepts as true all well pleaded factual allegations in the complaint, as summarized below.

Crown Castle is a telecommunications company that designs, installs, and operates distributed antenna systems ("DAS") to expand existing wireless telephone services in areas where there may be gaps in coverage.

The City is a municipal corporation of the state of New York.

The City Council is the municipal agency responsible for the management of the City-owned right-of-way ("ROW").

The City adopted a consent resolution on January 12, 2011, and entered into a right of way use agreement (the "RUA") with Crown Castle on February 17, 2011. The RUA has a term of ten years, expiring in 2021.

Pursuant to the resolution and agreement, from 2011 to 2015, Crown Castle deployed nine cells or "nodes" on pre-existing utility poles owned by Consolidated Edison, Inc., and located in the public ROW, as part of Crown Castle's DAS network. These cells were installed after plaintiff obtained permits reviewed by the Rye City Engineer under City Code Chapter 167, which governs utility installations in the public ROW. As part of the approval of the initial installation and under the express terms of the RUA, "the City did not require Crown Castle to seek permits under the City's wireless or zoning code chapters or based on any criteria outside the four corners of the RUA." (Compl. ¶¶ 63–64).

In 2015, Crown Castle sought "an interpretation of the RUA as part of a planned expansion to the DAS network" (Compl. ¶ 10) as well as a permit to add eighty-five nodes with larger equipment shrouds than previously used, and to install additional utility poles on which to

place some of these new nodes. Representatives from Crown Castle and the City met on March 15, 2016, to discuss the DAS expansion plan.

The City Council told Crown Castle it "would be exercising jurisdiction to review and approve the node plan and details." (Compl. ¶ 79). Thereafter, on April 8, 2016, Crown Castle wrote a letter to the City Council, confirming its intent to install new nodes in Rye. The letter also asked the City Council to interpret or amend the RUA to permit the larger equipment shrouds proposed in the DAS expansion plan.

The City Council "asserted permitting jurisdiction over the design, placement, and location of all the nodes planned as part of Crown Castle's DAS expansion." (Compl. ¶ 85). The City referred the matter to the City's Board of Architectural Review (the "BAR"). The BAR approved the larger shroud design and what, in the interim, had been reduced to seventy-three proposed node installations.

During this process, the City was under pressure from a citizens group opposed to the proposed DAS expansion. On June 14, 2016, Crown Castle received a petition from the citizens group "purporting to appeal the BAR approval of Crown Castle's plans . . . [and which] included a request that other City agencies . . . review Crown Castle's plans." (Compl. ¶ 87).

On June 17, 2016, Crown Castle submitted a letter to the City defending itself against the citizens group, summarizing Crown Castle's interpretation of several state and federal laws, and requesting that the City issue the permit at the July 13 City Council meeting.

The City requested additional information from Crown Castle, through City Council members and the City's outside counsel. Plaintiff alleges the City's actions violated provisions in the consent resolution and the RUA "which expressly require[d] that Crown Castle's small

3

cells be reviewed through the administrative process agreed to in 2011. . . consistent with review processes applied to other utility infrastructure providers in the ROW." (Compl. ¶ 11).

The City began a New York State Environmental Quality Review Act ("SEQRA") review process. See N.Y. Envtl. Conserv. Law, 8–0101, et. seq. On June 24, 2016, Crown Castle wrote to the City's Corporation Counsel stating that under Sections 3 and 5 of the RUA, the DAS expansion permit should be approved by the City Manager or City Engineer, rather than through a SEQRA review. Crown Castle also noted its position that the DAS expansion was a so-called Type II action exempt from SEQRA review. Nonetheless, on October 5, 2016, the City Council initiated a SEQRA review as lead agency.

In October 2016, Crown Castle submitted an alternate plan to the City Manager and City Engineer, under which Crown Castle would install no new utility poles and would further reduce the number of node installations to sixty-four.

In a letter to the City dated October 19, 2016, Crown Castle again argued against the SEQRA review.

Around the same time in October 2016, the City served Crown Castle with notice declaring Crown Castle in "material breach" of the RUA. (Compl. ¶ 136).

On November 28, 2016, Crown Castle submitted to the City updated engineering drawings and additional information to advocate for approval of the DAS expansion permit. On December 1, 2016, Crown Castle provided further information regarding its radio design criteria. It submitted supplemental materials over the following months.

On February 24, 2017, Crown Castle wrote to the City summarizing the status of the permit request and the latest DAS expansion plan to add sixty-four nodes without additional

poles. Over the next several months, Crown Castle continued to provide information and updates to the City seriatim.

The City Council held a meeting on April 19, 2017, the date it had identified as when the City would decide on the permit for the DAS expansion. Before the meeting, the City's Corporation Counsel sent Crown Castle a letter requesting a second opinion from an engineer. Crown Castle provided that opinion on April 21.

The City Council issued a "positive declaration" under SEQRA on April 19, 2017, "making the process subject to . . . mandatory environmental impact review under state law." (Compl. ¶ 193).

Plaintiff alleges on April 22, 2017, the City denied Crown Castle's request for an interpretation or amendment of the RUA and its application for the DAS expansion permit (the "denial"). However, the minutes from the City Council meeting at which the denial resolution was adopted show the so-called "denial" was a hypothetical statement of what the City would do if SEQRA did not apply. (Wilson Decl. Ex. E).[1]

According to the April 22 meeting minutes, the City Council adopted a resolution, which reiterated that "the City has determined that the project is subject to a positive declaration under SEQRA." (Wilson Decl. Ex. E). The resolution stated that in light of Crown Castle's contention "that the proposed project is exempt under SEQRA, or that a negative declaration would be

---

[1] In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In addition, the Court need not accept as true allegations in the complaint that are directly contradicted by documents upon which the pleadings rely. See In re Livent, Inc. Noteholders Sec. Litig., 151 F.Supp.2d 371, 405 (S.D.N.Y. 2001). Here, the plaintiff relies on the so-called "denial" in pleading counts I, II, III, IV, as well as in the facts common to all eight causes of action such that the document is incorporated by reference in the complaint. The Court credits the text of the meeting minutes over plaintiff's characterizations of it in the complaint.

appropriate, and [because Crown Castle] further appears to contend that the City is obligated by federal law to determine whether to grant or deny the request under the RUA," the City should "make a clear statement as to the action it would take based on Crown Castle's proposal as if the proposed project were exempt from SEQRA." (Id.) (emphasis added).

In addition, the resolution was "made without prejudice to the right of the City to approve the project after the completion of a SEQRA analysis." (Wilson Decl. Ex. E). Moreover, the paragraph purporting to deny the application for DAS expansion contains the caveat, "[a]ssuming that the City is required by federal law to make a determination as of this date based on the plans before it . . . the City concludes that the requests for placement under Plans A, B and C should be denied." (Id.) (emphasis added).

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

II.     Motion to Dismiss

Defendants argue plaintiff has failed to state a TCA claim because, inter alia, the claims are in essence contract claims sounding in state law.[2]

The Court agrees.

Plaintiff asserts defendants violated Sections 253(a), 253(c), 332(c)(7)(B)(i)(II), and 332(c)(7)(B)(iii) of the TCA. The Court addresses each provision in turn.

   A.    Section 253 Claim

Section 253(a) of the TCA provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." And Section 253(c), the so-called "savings" clause, provides: "Nothing in this section affects the authority of a . . . local government to manage the public rights-of-way . . . on a competitively neutral and nondiscriminatory basis."

Therefore, to prevail on a Section 253 claim, plaintiff must plead (i) it provides telecommunication services, and (ii) a statute, regulation, or legal requirement prohibits its ability to provide such services.

As an initial matter, the Second Circuit has previously held that Crown Castle, through its predecessors in interest, provides telecommunications services for purposes of the TCA. NextG

---

[2]    Defendants also move under Rule 12(b)(7) for failure to join a necessary party. Because the Court is dismissing the case, it need not separately address the Rule 12(b)(7) argument.

7

Networks of NY, Inc. v. City of New York, 513 F.3d 49, 50 (2d Cir. 2008); TCG New York, Inc. v. City of White Plains, 305 F.3d 67, 71 (2d Cir. 2002). Thus, the first element in plaintiff's claim is satisfied.

Next, plaintiff alleges the City's eighteen-month delay in providing a decision on the permit for plaintiff's DAS expansion plan, the City's requests for information from Crown Castle in the course of the City's review, and the "denial and review processes employed by the City," amount to a prohibition of telecommunications services under Section 253(a). (Compl. ¶¶ 254–256).

As discussed above, plaintiff's characterization of the "denial" as such is contrary to the language of the April 22, 2017, resolution. Therefore, the Court considers only whether the review process employed by the City is itself a violation of Section 253(a).

Plaintiff does not cite and the Court is not aware of any binding authority holding that a municipality's review process is a "legal requirement" for purposes of Section 253(a) of the TCA.

Moreover, plaintiff's reliance on Lucas v. Planning Board of Town of LaGrange, 7 F. Supp. 2d 310 (S.D.N.Y. 1998), is misplaced. There, the court held the TCA preempted SEQRA review when a consent agreement in a prior law suit resulted in a revocation of a positive declaration and, in a subsequent law suit, new plaintiffs attempted to reinstate the SEQRA process on a technicality, unjustifiably delaying the approval of permits, which had already been approved. Id. at 316–17. The Lucas decision does not broadly hold that the TCA preempts SEQRA, nor does plaintiff argue that position here. See Spring Spectrum L.P. v. Willoth, 176 F.3d 630, 644 (2d Cir. 1999) (because the TCA does not provide the legal basis to deny construction of a personal wireless facility, state or local law, i.e. SEQRA, must provide the legal

8

basis for denial).

Rather than argue SEQRA is preempted, plaintiff appears to assert that the review process itself, and the delay associated with it, violated the TCA.

This argument is unavailing.

The Second Circuit has held the TCA does not render a SEQRA review or any delays associated with that review a violation of federal law. New York SMSA Ltd. P'ship v. Town of Riverhead Town Bd., 118 F.Supp.2d 333, 341 (E.D.N.Y. 2000), aff'd, 45 Fed. App'x. 24 (2d Cir. 2002) (summary order) ("[A] a positive SEQRA declaration necessarily delays a final decision. . . . This court will not hold that a local government's invocation of that statute is precluded because of the existence of the TCA.").

Moreover, review alone cannot be a proscribed barrier to entry under Section 253(a) because Section 332(c)(7)(B)(iii) of the TCA contemplates a process through which a local government can compile "substantial evidence" sufficient to justify denial of a request to place, construct, or modify wireless facilities. It is self-evident that this requirement necessitates thorough review.

Plaintiff also does not allege any other statute, ordinance,[3] or regulation imposed by the City that could otherwise bring the matter under the purview of Section 253 of the TCA. Thus, to the extent this review process was contrary to the RUA, that is a contract dispute, not a question of federal law.

Finally, plaintiff's reliance on TCG New York, Inc. v. City of White Plains, 305 F.3d 67 (2d Cir. 2002), is also misplaced. There, the Second Circuit found a city ordinance requiring

---

[3] Plaintiff did not apply for the expansion under Chapter 196 of the City Code, which would otherwise govern the installation of wireless facilities. (Wilson Decl. Ex. E, Attachment A).

9

TCG to pay a fee for use of conduit space, but not requiring Verizon to pay any such fee, was inherently discriminatory and therefore was not saved by Section 253(c). Id. at 79–80. The court also distinguished between the city's ability to regulate the use of the ROW, which is legal, and the city's attempt to regulate telecommunications, which violated the TCA. Id. at 81 ("Although a similar requirement [for prior approval of the proposed locations of TCG's network] might be permissible if it were limited to public land, the sections as written restrict TCG's ability to develop a network even on private property and are, therefore, invalid.").

Because there is no ordinance, regulation, or legal requirement at issue and the City's review falls within the kind of ROW approval contemplated as legal in TCG, plaintiff fails to state a claim under Section 253(a) of the TCA.

In addition, Section 253(c) does not create a standalone violation of the TCA. Instead, it is a safe harbor for municipalities, or a "savings clause" that carves out liability rather than imposing it. See TCG New York, Inc. v. City of White Plains, 305 F.3d at 73, 77–78.

Because there is no violation of Section 253(a), there is no need to address the applicability of the savings clause in Section 253(c).

Accordingly, the Section 253 claim must be dismissed.

B. Section 332 Claims

Plaintiff alleges the City's "denial" was not supported by substantial evidence as required by Section 332(c)(7)(B)(iii) and was an effective prohibition under Section 332(c)(7)(B)(i)(II).[4]

---

[4] Plaintiff, which is represented by counsel, references the FCC "Shot Clock Order" and various tolling agreements regarding the Shot Clock in its complaint, potentially trying to suggest defendants did not act on plaintiff's request in a timely manner in violation of TCA Section 332(c)(7)(B)(ii). (Compl. ¶¶ 43, 115, 118, 171). However, plaintiff does not plead any cause of action under Section 332 based on this alleged delay. Similarly, plaintiff pleads facts that suggest an intent to plead discriminatory treatment as compared to another provider, Altice. But here too, plaintiff does not plead a cause of action under Section 332(c)(7)(B)(i)(I), which is

The Court disagrees.

Sections 332(c)(7)(B)(i)(II) and (iii) state in relevant part:

> The <u>regulation</u> of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of wireless services[.] . . . Any <u>decision</u> by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(emphasis added).

As previously explained, plaintiff misconstrues the nature of the so-called "denial." Because the "denial" was hypothetical, it was neither a "regulation" nor a "decision" for purposes of stating a claim under TCA Section 332(c)(7)(B).

Moreover, not only is the purported "denial" not a final decision for Section 332, the positive declaration under SEQRA is also not a final decision. <u>Leonard v. Planning Bd. of the Town of Union Vale</u>, 659 F. App'x 35, 39 (2d Cir. 2016) (citing <u>Homefront Org., Inc. v. Motz</u>, 570 F.Supp.2d 398, 406 (E.D.N.Y. 2008)) ("The law is well-settled in New York that a positive declaration pursuant to SEQRA is not a final agency decision that is reviewable under New York law.").

Accordingly, the Section 332 claims must be dismissed.

III.   <u>State Law Claims</u>

Plaintiff also seeks to reverse the City's SEQRA determination under New York CPLR Article 78 and to reverse the so-called "denial" pursuant to Section 27 of the New York State Transportation Corporations Law. Invoking the RUA, plaintiff also seeks damages for breach of

---

for unreasonable discrimination among providers. The Court declines to liberally construe the complaint to read in un-pleaded claims and will not address the merits of them.

contract, and an order reversing the "denial" and directing the City to issue all necessary permits and authorizations to allow plaintiff to complete the DAS expansion plan.

Having dismissed all of plaintiff's federal claims, there are no longer any claims remaining over which the Court has original jurisdiction. In an exercise of its discretion, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). The state law claims are dismissed without prejudice.[5]

IV. Preliminary Injunction

Because the Court dismisses the case, it need not address the merits of plaintiff's motion for a preliminary injunction, which is now moot.

**CONCLUSION**

Defendants' motion to dismiss is GRANTED.

Plaintiff's motion for a preliminary injunction is DENIED AS MOOT.

The temporary restraining order entered May 12, 2017 (Doc. #6) is VACATED.

The Clerk is instructed to terminate the pending motion (Doc. #13) and close this case.

Dated: December 8, 2017
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[5] In the alternative, defendants seek dismissal on the ground that plaintiff's claims are not ripe for review. The ripeness question concerns the SEQRA review claim, but because the complaint is dismissed for failure to state a claim under the TCA, and the Court declines to exercise supplemental jurisdiction, the Court need not reach the ripeness issue.